FOUNTAIN POINTE, LLC *v.* LILIANA CALPITANO, TRUSTEE OF THE CALPITANO FAMILY TRUST ET AL.
(AC 34199)

Alvord, Sheldon and Borden, Js.

Argued April 8—officially released August 6, 2013

*P. Jo Anne Burgh*, with whom was *Salvatore Bonanno*, for the appellants (defendants).

*Kerry M. Wisser*, with whom was *Nathan A. Schatz*, for the appellee (plaintiff).

*Opinion*

BORDEN, J. The defendants, Liliana Calpitano, individually and as trustee of the Calpitano Family Living Trust (Trust), and Rick P. Calpitano, appeal from the judgment of the trial court in favor of the plaintiff, Fountain Pointe, LLC, that declared invalid the defendants' mortgages on a certain piece of real property and found that they had committed slander of title in violation of General Statutes § 47-33j.[1] The defendants claim that the trial court improperly: (1) found that

---

[1] General Statutes § 47-33j provides: "No person may use the privilege of recording notices under sections 47-33f and 47-33g for the purpose of slandering the title to land. In any action brought for the purpose of quieting title to land, if the court finds that any person has recorded a claim for that purpose only, the court shall award the plaintiff all the costs of the action, including such attorneys' fees as the court may allow to the plaintiff, and in addition, shall decree that the defendant asserting the claim shall pay to the plaintiff all damages the plaintiff may have sustained as the result of such notice of claim having been so recorded."

the mortgages lacked consideration; (2) declared the promissory notes invalid; (3) rendered judgment even though the plaintiff failed to file an amended complaint; (4) denied the defendants' motion to dismiss; (5) proceeded without an indispensable party; and (6) found in the plaintiff's favor on its slander of title claim. We affirm the judgment of the trial court.

The plaintiff brought this action in four counts: (1) quiet title pursuant to General Statutes § 47-31; (2) discharge of the mortgages pursuant to General Statutes § 49-13 (a) (1) (E); (3) slander of title pursuant to § 47-33j; and (4) violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The trial court rendered judgment declaring the two mortgages held by the defendants to be invalid, and that the defendants had committed slander of title. This appeal followed.

The following findings set forth in the court's memorandum of decision find support in the record. "Fountain Pointe, LLC . . . was formed in March, 2006, by two then longtime friends, Richard Rotundo and Rick P. Calpitano, each holding a 50 percent ownership. Fountain Pointe was formed to purchase and develop properties for commercial use and eventual sale. Rotundo handled the everyday operations as a general contractor and developer of buildings, which included selling the units, hiring workers, ordering material, making sales, site work, etc. Calpitano, who resides in Florida, handled most of the financial aspects of Fountain Pointe.

"In September, 2007, Fountain Pointe obtained a construction mortgage from Connecticut Bank and Trust (CBT) in the amount of $2.5 million, and the mortgage was secured by two properties, one owned by Fountain Pointe and the other owned by Rotundo Developers, LLC (Rotundo Developers). This lawsuit only concerns

lot 11A, which is made up of two parcels, unit A and unit D. . . . The property was raw land, and the plan was to develop lot 11A into thirteen office condominiums, which Fountain Pointe would then sell. Rotundo Developers, Rotundo and Calpitano were the guarantors of the loan. . . . Attorney Glenn Terk represented Fountain Pointe as well as the guarantors at the closing, and Terk provided an opinion letter to CBT as well as a mortgage title insurance policy, which indicated that lot 11A was encumbered by only a mortgage to CBT in the amount of $2.5 million.

"Sometime in 2008, Calpitano advised Rotundo that he wanted to transfer his interest in Fountain Pointe to his sister, Liliana Calpitano (Liliana). Rotundo had no objection to the transfer, as it would make no difference as to how the everyday operations would continue to take place. No resolutions or documents were executed authorizing the transfer as set forth in the operating agreement, article 10.1. . . . However, from that time forward, Liliana executed all company resolutions for the sales of the units, the conveyance tax forms listed Liliana and Rotundo as the members of Fountain Pointe, and both Liliana and Rotundo signed an affidavit stating they were 'the only members of Fountain Pointe, LLC.' . . . The tax return for the year 2008 listed Richard Rotundo and Liliana as 50 percent owners of Fountain Pointe. . . .

"On December 15, 2009, Fountain Pointe entered into a Real Estate Agreement to sell unit A of Fountain Pointe Professional Park, to Rotundo Developers, for $1.8 million. . . . In order for Rotundo Developers to purchase the property, it sought and obtained a mortgage commitment in the amount of $1.35 million. Rotundo signed the agreement on behalf of Fountain Pointe as well as on behalf of Rotundo Developers. Rotundo and Calpitano negotiated this purchase and sale, and engaged in a string of e-mails regarding the

profit that Fountain Pointe would make on this transaction. This began the dispute between Rotundo and Calpitano. Calpitano indicated that he was entitled to a certain amount of money from the sale, and Rotundo disagreed. Eventually the parties involved attorneys in the dispute, and Terk, representing Calpitano, and Paul Argazzi, on behalf of Rotundo, had telephone conversations attempting to resolve the dispute. Terk made a demand to obtain certain documents relating to Fountain Pointe, and Argazzi refused to provide the copies, stating that Calpitano was no longer a member of Fountain Pointe since he had transferred his interest to his sister, Liliana.

"On January 28, 2010, after [being] notified that Argazzi would not provide the documents to Terk, Calpitano sent the following e-mail to Rotundo: 'Richie, I'm putting you on notice right now that this property will not close, now or ever until my demands are met. It's clear that you don't have the respect to give Argazzi permission, not that I need it, to give me copies of all the documents. So what you won't give me is rightfully mine I will take and make sure that this deal doesn't close until hell freezes over, unlike you I can weather the financial shit storm caused by you, and I'll make it my personal mission to fucking legally bury you for years to come. You've become a real fucking snake and [your] true colors have come out. Get your affairs in order.' . . .

"Four days after Calpitano sent the e-mail to Rotundo, the first of the disputed mortgages was recorded on the Newington land records. . . . The mortgage is from Fountain Pointe, LLC, to [the] Calpitano Family Living Trust (Trust), in the amount of $600,000, dated January 11, 2007, and recorded February 1, 2010. It is secured by lots 11 and 11A. It is signed by Calpitano as Member. The deed states that it is securing a promissory note dated January 11, 2007, with a maturity date of January

11, 2009. . . . The note is executed by Calpitano as Member/Manager, and also by Calpitano, individually. . . . Three days after that mortgage was recorded, a second mortgage from Fountain Pointe, LLC, to [the] Calpitano Family Living Trust was recorded, under the same terms and conditions, but was signed by Liliana Calpitano as Member. The note which this mortgage secured was in the amount of $600,000 and was signed by Liliana Calpitano as Member/Manager, and signed by Rick P. Calpitano individually. . . .

"Rotundo, as a member of Fountain Pointe, had no knowledge of either of these mortgage deeds or notes when they were purportedly executed or recorded, nor did he have any knowledge that Fountain Pointe borrowed any sums of money from the Trust. There was never any formal notice given to Fountain Pointe of these alleged notes and mortgages. Rotundo Developers was still trying to close on the property, and was attempting to borrow $1.35 million for the purchase of unit A from Fountain Pointe. Rotundo discovered the existence of the mortgages when his attorney was performing a title search on the property. Because the mortgages were encumbering the property, Rotundo Developers was unable to obtain the funding needed for the purchase, and the real estate transaction could not be consummated.

"Not only did Calpitano fail to inform his fellow member, Rotundo, of the existence of these two mortgages, he also failed to inform him that the Trust had proceeded with a foreclosure action on the mortgages. . . .[2]

---

[2] On March 3, 2010, the Calpitano Family Living Trust brought an action to foreclose both mortgages. Fountain Pointe, LLC, a defendant in the foreclosure action, moved to dismiss the action for lack of subject matter jurisdiction because the Trust was not a legal entity capable of commencing a lawsuit. The court, *Vacchelli, J.*, granted the motion to dismiss for lack of subject matter jurisdiction and on the ground of mootness because a new action had been brought with the correct plaintiff. See *Calpitano Family Living Trust* v. *Fountain Pointe, LLC*, Superior Court, judicial district of

"Unable to consummate the transaction of unit A between Fountain Pointe and Rotundo Developers as planned, Rotundo, acting on behalf of Fountain Pointe as a member/manager, instead executed a quitclaim deed of the property to Rotundo Developers on March 31, 2010. The deed was conveyed for no consideration. In addition, a second quitclaim deed was executed from Rotundo Developers to Fountain Pointe, which deed is being held in escrow. The intent is that if Fountain Pointe is unsuccessful in discharging the two mortgages in question in this matter, and therefore unsuccessful in this lawsuit, the deed would be recorded, undoing the transaction between Fountain Pointe and Rotundo Developers because Rotundo Developers would not be able to get clear title in light of the Trust's mortgages. . . . Thus, as of the date of the filing of the present suit, title to unit A was in the name of Rotundo Developers, LLC.

"On June 9, 2010, Calpitano, purportedly on behalf of Fountain Pointe, transferred unit D to Fountain Pointe Holdings, LLC, a limited liability company that Calpitano had created and of which he is a sole member." (Citations omitted; internal quotation marks omitted.)

On May 10, 2010, the plaintiff brought this four count complaint against the defendants. The first count

New Britain, Docket No. CV-10-6004007 (September 7, 2010). On August 3, 2010, Rick Calpitano, as trustee for the Calpitano Family Living Trust, brought an action seeking foreclosure of both mortgages against Fountain Pointe, LLC, and Rotundo. Thereafter, Fountain Pointe, LLC, and Rotundo moved for summary judgment in their favor, arguing that the court was bound by Judge Swienton's decision declaring the mortgages invalid, which was rendered subsequent to the initiation of the second foreclosure action. The court, *Abrams, J.*, rendered summary judgment in favor of Fountain Pointe and Rotundo on the ground that Calpitano was collaterally estopped from asserting the validity of the mortgages. See *Calpitano* v. *Fountain Pointe, LLC,* Superior Court, judicial district of New Britain, Docket No. CV-10-6006235 (February 5, 2013). "Appellate courts may take judicial notice of files of the trial court in the same or other cases." *Stuart* v. *Freiberg,* 142 Conn. App. 684, 687 n.3, 69 A.3d 320 (2013).

sought to quiet title to lot 11A, consisting of units A and D, by determining the rights of the parties to the property pursuant to § 47-31.[3] The second count sought a discharge of the defendants' mortgages pursuant to § 49-13 (a) (1) (E).[4] The third and fourth counts asserted claims of slander of title pursuant to § 47-33j and a violation of CUTPA, respectively.

After a trial to the court and the filing of posttrial briefs, the court found that the plaintiff held record title to the property, and that the two mortgages recorded by the defendants lacked consideration and were invalid. The court further found that § 49-13 (a) (1) (E) was not applicable because the validity of the mortgages was in dispute. As to the slander of title count, the court found that the defendants had committed statutory slander of title by recklessly recording the mortgages and the lis pendens that they knew were false. Additionally, the court found that CUTPA was inapplicable to the case.[5] Accordingly, the court rendered judgment declaring the two mortgages held by the defendants invalid

[3] General Statutes § 47-31 (a) provides in relevant part: "An action may be brought by any person claiming title to, or any interest in, real or personal property . . . against any person who may claim to own the property . . . or to have any interest in the property, or any lien or encumbrance on it, adverse to the plaintiff, or against any person in whom the land records disclose any interest, lien, claim or title conflicting with the plaintiff's claim, title or interest, for the purpose of determining such adverse estate, interest or claim, and to clear up all doubts and disputes and to quiet and settle the title to the property. . . ."

[4] General Statutes § 49-13 (a) provides in relevant part: "When the record title to real property is encumbered (1) by any undischarged mortgage . . . (E) the mortgage has become invalid, and in any of such cases no release of the encumbrance to secure such note or evidence of indebtedness has been given . . . the person owning the property, or the equity in the property, may bring a petition to the superior court for the judicial district in which the property is situated, setting forth the facts and claiming a judgment as provided in this section. . . ."

[5] On appeal, the plaintiff does not challenge the court's ruling on the CUTPA claim.

and awarding damages to the plaintiff for slander of title.[6]

## I

The defendants first claim that the court improperly concluded that there was no consideration given for either of their mortgages. We disagree.

"It almost goes without saying that consideration is [t]hat which is bargained-for by the promisor and given in exchange for the promise by the promisee . . . . We also note that [t]he doctrine of consideration does not require or imply an equal exchange between the contracting parties. . . . Consideration consists of a benefit to the party promising, or a loss or detriment to the party to whom the promise is made. . . . Whether an agreement is supported by consideration is a factual inquiry reserved for the trier of fact and subject to review under the clearly erroneous standard. . . . [W]e are mindful that [i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . On appeal, we will give the evidence the most favorable reasonable construction in support of the verdict to which it is entitled."[7] (Citations omitted;

---

[6] When the court issued its judgment of liability on the slander of title count, it noted that the damages claimed by the plaintiff were not only its attorney's fees and costs incurred in prosecuting this action, but also those expended in defending the two foreclosure actions. The court had agreed to bifurcate the issue of attorney's fees in the event that it ruled in favor of the plaintiff and, therefore, held a hearing on the issue of attorney's fees on January 26, 2012. On April 2, 2012, the court determined that attorney's fees incurred by the plaintiff in defending itself against the two foreclosure actions could be considered "damages" under § 47-33j, awarding $78,380.35 in attorney's fees and costs for prosecuting the slander of title claim, and $49,123 in attorney's fees and costs incurred in defending the foreclosure actions. The court also awarded postjudgment interest.

[7] The defendants incorrectly argue that the proper standard of review for this claim is plenary review. This court recently reiterated: "Whether an agreement is supported by consideration is a factual inquiry reserved for the trier of fact and subject to review under the clearly erroneous standard. . . . The conclusion drawn from the facts so found, i.e., whether a particular

internal quotation marks omitted.) *NSS Restaurant Services, Inc.* v. *West Main Pizza of Plainville, LLC,* 132 Conn. App. 736, 740–41, 35 A.3d 289 (2011).

In their brief, the defendants argue that the court failed to credit evidence showing that payments were made to and on behalf of the plaintiff by Maria Calpitano and Liliana Calpitano, settlors of the Trust, and Rick Calpitano, as part of the loan that was advanced by the Trust to fund the disputed notes and mortgages.[8] The evidence showed that a check dated May 29, 2008, for $100,000 was received by the plaintiff from a joint checking account in the names of Maria Calpitano and Liliana Calpitano. The court specifically determined, however, that this $100,000 payment was part of a capital contribution to the plaintiff on behalf of Rick Calpitano, and that he subsequently withdrew funds from the plaintiff to reimburse himself for that capital contribution. The court also observed that this joint checking account was not identified as part of the Trust corpus and that the checks were not drawn on an account

set of facts constitute consideration in the particular circumstances, is a question of law . . . and accordingly is subject to plenary review." (Citations omitted; internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *DelMastro,* 133 Conn. App. 669, 680, 38 A.3d 166, cert. denied, 304 Conn. 917, 40 A.3d 783 (2012). In the present case, the question before the court was whether the mortgages were supported by consideration, which is a factual inquiry. In answering that question in the negative, the court made a factual determination that is subject to limited appellate review. If, on the other hand, the court had determined that facts existed to constitute consideration, that determination would have been a matter of law and subject to our plenary review. Thus, we review this claim under the clearly erroneous standard.

[8] The defendants also argue, in the alternative, that even if the line of credit supposedly created by the promissory notes was never funded, the purported establishment of a line of credit under the terms of the promissory notes, in and of itself, was sufficient to require the court to conclude that there was consideration for both mortgages. This claim, however, was never argued to the trial court, and therefore we decline to consider it on appeal. See *McKechnie* v. *McKechnie,* 130 Conn. App. 411, 415, 23 A.3d 779, cert. denied, 302 Conn. 931, 28 A.3d 345 (2011).

in the Trust's name. Additional evidence showed that various checks from the Maria Calpitano and Liliana Calpitano joint checking account were written payable to Oasis Builders, another Rick Calpitano owned company, and the defendants attempted to argue that these funds were to reimburse Oasis Builders for the plaintiff's expenses. The court found that there was no evidence produced to substantiate these claims. It concluded that "there was no consideration given for either of the mortgages or promissory notes, and [the court] finds them to be invalid. The exchanges of checks . . . do not appear to be anything more than attempts to move money around so that its source and application could not be traced." Our review of the record reveals that the evidence offered sufficiently demonstrates that, during the existence of these mortgages, no advancement of payments on the alleged debt were made from the Trust to the plaintiff. Excluding the testimony of Liliana Calpitano and Rick Calpitano, which the court expressly did not credit, there was no support for the court to find that the various checks from the Calpitano accounts and entities were payments from the Trust to the plaintiff as consideration for the two mortgages.

The defendants' claim is, essentially, that they do not agree with the court's factual findings and urge us to reconsider the evidence and reach a different conclusion. "[W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . The credibility of the witnesses and the weight to be accorded to their testimony is for the trier of fact. . . . [An appellate] court does not try issues of fact or pass upon the credibility of witnesses." (Citation omitted; internal quotation marks omitted.) *Har* v. *Boreiko*, 118 Conn. App. 787, 795, 986 A.2d 1072

(2010). We decline the defendants' invitation to invade the province of the trial court and reweigh the evidence in their favor. We hold that the court's finding that the mortgages lacked consideration is not clearly erroneous.

## II

We turn next to the defendants' claim that because the plaintiff's complaint did not seek to adjudicate the validity of the promissory notes, but only the validity of the mortgages, the court's judgment with respect to the promissory notes is invalid. We disagree.

"[A]n interpretation of the pleadings in the underlying action . . . presents a question of law and is subject to de novo review on appeal. . . . The purpose of a complaint or counterclaim is to limit the issues at trial, and such pleadings are calculated to prevent surprise. . . . It is fundamental in our law that the right of a [party] to recover is limited to the allegations in his [pleading]. . . . Facts found but not averred cannot be made the basis for a recovery. . . . Thus, it is clear that [t]he court is not permitted to decide issues outside of those raised in the pleadings." (Citation omitted; internal quotation marks omitted.) *Breiter* v. *Breiter*, 80 Conn. App. 332, 335, 835 A.2d 111 (2003).

The defendants focus on the court's statement in its memorandum of decision in which the court stated "that there was no consideration given for either of the mortgages *or the promissory notes*, and finds them to be invalid." (Emphasis added.) The defendants argue that because the plaintiff sought in its complaint to have the court declare only the mortgages invalid, the court went beyond the pleadings to examine the validity of the promissory notes securing the mortgage. Although we recognize that a court may not decide issues outside of those raised in the pleadings, here the court did not render a *judgment* as to the promissory

notes. Instead, based on its requisite findings that both the mortgages and the promissory notes lacked consideration, "[a]s to count one, the court [found] in favor of the plaintiff . . . and against the defendant, [the] Calpitano Family Living Trust, and declares the two mortgages from [the plaintiff] to the Calpitano Family Living Trust, dated January 11, 2007, invalid and of no force and effect." The defendants have not provided any law, nor are we aware of any, that would preclude the court from declaring the mortgages invalid and including in its analysis a finding that the promissory notes suffered from the same lack of consideration as well.

### III

The defendants' third claim includes several arguments regarding the plaintiff's amended complaint. Specifically, the defendants argue that the court abused its discretion in granting the plaintiff's motion to amend the complaint and allowing the plaintiff to open its case-in-chief. The defendants also argue that the trial court's judgment on the basis of this amended complaint is void because, despite having permission to file an amended complaint, the plaintiff failed actually to file a written amendment. We do not agree.

The following additional procedural history is relevant to our discussion of these claims. The plaintiff's original complaint, filed on May 10, 2010, alleged that "it is the absolute owner in possession of . . . [l]ot 11A . . . ." This was the operative complaint when the parties began the trial before the court. At the conclusion of the plaintiff's case-in-chief, counsel for the defendants made an oral motion, pursuant to Practice Book § 15-8,[9] to dismiss the action for the plaintiff's

---

[9] Practice Book § 15-8 provides in relevant part: "If, on the trial of any issue of fact in a civil matter tried to the court, the plaintiff has produced evidence and rested, a defendant may move for judgment of dismissal, and the judicial authority may grant such motion if the plaintiff has failed to make out a prima facie case. . . ."

failure to make out a prima facie case that the plaintiff was the absolute owner in possession of lot 11A so as to confer standing for the plaintiff's action pursuant to § 47-31 (b).[10] In response, the plaintiff moved to amend the complaint to conform to the proof at trial by amending paragraph 1 to add the language, "either absolute owner in possession *and/or an interest in title to the property* . . . ." (Emphasis added.) The plaintiff also moved to open the evidence to present brief testimony as to unit A regarding the quitclaim deed from Rotundo Developers back to the plaintiff.

The court denied the defendants' motion to dismiss and granted both of the plaintiff's motions, allowing it to amend the complaint to include the additional "and/or an interest in title to the property" language and to open the evidence. The plaintiff presented evidence in the form of a written memorandum evidencing a quitclaim deed from the plaintiff to Rotundo Developers. The memorandum also referenced a further agreement that, if the plaintiff proves unsuccessful in discharging the defendants' mortgages, in order to protect the plaintiff's interests Rotundo Developers will hold in escrow a quitclaim deed transferring the property back to the plaintiff. Rotundo also testified that the quitclaim deed from Rotundo Developers was already being held in escrow at the time the plaintiff filed the present action. Ultimately, however, the plaintiff never filed a written amendment to the complaint. In its memorandum of decision, the court referred to the plaintiff's allegations that "it is the absolute owner in possession of or had an interest in lot 11A" and noted that the complaint was amended during trial to add the language "or has an interest in."

[10] In part IV of this opinion, we address the defendants' argument regarding standing in the context of the court's denial of their motion to dismiss pursuant to Practice Book § 15-8.

A

We first address the defendants' claim that the court abused its discretion in granting the plaintiff's motion to amend the complaint. "A trial court's ruling on a motion of a party to amend its complaint will be disturbed only on the showing of a clear abuse of discretion. . . . Whether to allow an amendment is a matter left to the sound discretion of the trial court. [An appellate] court will not disturb a trial court's ruling on a proposed amendment unless there has been a clear abuse of that discretion. . . . It is the [plaintiff's] burden . . . to demonstrate that the trial court clearly abused its discretion. . . . A trial court may allow, in its discretion, an amendment to pleadings before, during, or after trial to conform to the proof. . . . Factors to be considered in passing on a motion to amend are the length of the delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment. . . . The essential tests are whether the ruling of the court will work an injustice to either the plaintiff or the defendant and whether the granting of the motion will unduly delay a trial." (Internal quotation marks omitted.) *Fiallo* v. *Allstate Ins. Co.*, 138 Conn. App. 325, 331–32, 51 A.3d 1193 (2012).

The defendants have failed to demonstrate that the court abused its discretion in permitting the amendment. The amendment did not alter the substance of the plaintiff's claims, and the resulting delay consisted of one additional exhibit and brief testimony by Rotundo. See *Tornaquindici* v. *Keggi*, 94 Conn. App. 828, 843–44, 894 A.2d 1019 (2006) (trial court properly exercised discretion to allow amendment to complaint upon finding amendment adding specification of damages of which defendant had been apprised through litigation would not result in undue delay or prejudice to opposing party). The defendants argue that, because the plaintiff knew about the quitclaim deed to Rotundo

Developers prior to filing the original complaint, it was unfair and prejudicial for the plaintiff to amend its complaint to correct the identification of its interest in the quitclaimed property. The court specifically found that there was no prejudice to the defendants, however, because they also had knowledge that these transfers had taken place. The absence of demonstrable prejudice strongly supports the conclusion that there was no abuse of discretion in the court's allowance of the plaintiff's amendment.

## B

We turn now to the defendants' claim that the court improperly opened the evidence to allow the plaintiff to present evidence about the quitclaim deeds with Rotundo Developers. "Whether or not a trial court will permit further evidence to be offered after the close of testimony in the case is a matter resting within its discretion. . . . In the ordinary situation where a trial court feels that, by inadvertence or mistake, there has been a failure to introduce available evidence upon a material issue in the case of such a nature that in its absence there is serious danger of a miscarriage of justice, it may properly permit that evidence to be introduced at any time before the case has been decided." *Silicon Valley Bank* v. *Miracle Faith World Outreach, Inc.*, 140 Conn. App. 827, 837, 60 A.3d 343 (2013). The record indicates that the court's decision to grant the plaintiff's request to open the evidence was linked to its decision to allow the plaintiff to amend the complaint to conform to the proof that the plaintiff had an interest in, as opposed to absolute ownership of, the property. The defendants' counsel admitted that he was aware of the additional evidence that the plaintiff proposed to adduce and objected on the sole ground that neither the amendment nor the additional proof would be sufficient to support the claim of standing. See *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 297

Conn. 105, 134 n.35, 998 A.2d 730 (2010) (granting of motion to open evidence appropriate where "defendants did not alert the trial court to any possible prejudice that might arise from the granting of the motion").

C

The defendants also take issue with the fact that the plaintiff never filed a formal written amendment to the complaint, instead relying on the substance of the oral amendment before the court. "With respect to the lack of an amendment of the complaint, it is true that ordinarily a court may not grant relief on the basis of an unpleaded claim. . . . That does not necessarily mean, however, that the absence of a particular claim from the pleadings automatically precludes a trial court from addressing the claim, because a court may, despite pleading deficiencies, decide a case on the basis on which it was actually litigated and may, in such an instance, permit the amendment of a complaint, even after the trial, to conform to that actuality. . . . Indeed, we have recognized that, even in the absence of such an amendment, where the trial court had in fact addressed a technically unpleaded claim that was actually litigated by the parties, it was improper for the Appellate Court to reverse the trial court's judgment for lack of such an amendment." (Citations omitted.) *Stafford Higgins Industries, Inc.* v. *Norwalk*, 245 Conn. 551, 575, 715 A.2d 46 (1998).

The foregoing principle protects defendants by preventing plaintiffs from varying the factual aspects of their cases during trial so as to alter the basic nature of the cause of action alleged in the complaint; in other words, a plaintiff may not allege one cause of action and recover upon another. See *Oxford House at Yale* v. *Gilligan*, 125 Conn. App. 464, 469–70, 10 A.3d 52 (2010). The present case is not one where the court rendered judgment on an unpleaded claim that altered

in a significant way the basic nature of the case. The defendants cannot claim that they were surprised by the decision on the basis of the oral amendment to the complaint. The terms of the amendment, namely, the addition of "or has an interest in," were clearly set forth by the plaintiff's counsel when he moved to amend the complaint. We agree with the plaintiff that, under these circumstances, the defendants' claim of error seeks to elevate form over substance. Such rigid formality with respect to pleadings is not required when the issue is properly argued before the court. See *Stafford Higgins Industries, Inc.* v. *Norwalk*, supra, 245 Conn. 575. Accordingly, in light of the extensive argument before the court regarding the amendment and the defendants' counsel's confirmation in the record of the specific wording of the amendment, it was not improper for the court to render judgment without the formal written amendment.

## IV

The defendants next claim that the court improperly denied their motion to dismiss for failure to make out a prima facie case, pursuant to Practice Book § 15-8 because the plaintiff failed to establish that it was the "absolute owner in possession" of the property, as alleged in its original complaint. The underlying premise for the defendants' motion to dismiss was that the plaintiff did not have standing to commence the action before the trial court. The defendants also challenge the failure of the plaintiff's complaint to comply with the pleading requirements of § 47-31 (b).[11] The plaintiff responds that the court correctly determined that at the time the plaintiff initiated the action, it owned unit D and had a sufficient interest in unit A to confer standing pursuant

---

[11] General Statutes § 47-31 (b) provides in relevant part: "The complaint in such action shall describe the property in question and state the plaintiff's claim, interest or title and the manner in which the plaintiff acquired the claim, interest or title and shall name the person or persons who may claim the adverse estate or interest. . . ."

to § 47-31. For the following reasons, we agree with the plaintiff.

Under both the applicable standards of review for whether the plaintiff has made out a prima facie case and has standing, our review is plenary. "The standard for determining whether the plaintiff has made out a prima facie case, under Practice Book § 15-8, is whether the plaintiff put forth sufficient evidence that, *if believed*, would establish a prima facie case, not whether the trier of fact believes it. . . . For the court to grant the motion [for judgment of dismissal pursuant to Practice Book § 15-8], it must be of the opinion that the plaintiff has failed to make out a prima facie case. . . . Whether the plaintiff has made out a prima facie case is a question of law, over which our review is plenary." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Moss* v. *Foster*, 96 Conn. App. 369, 378, 900 A.2d 548 (2006). "[A] party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.) Id., 374. "[T]he court has a duty to dismiss, even on its own initiative, any appeal that it lacks jurisdiction to hear. . . . Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . . Our review of the question of [a] plaintiff's standing is plenary." (Internal quotation marks omitted.) *Naier* v. *Beckenstein*, 131 Conn. App. 638, 644, 27 A.3d 104 (2011).

An action to quiet title "may be brought by any person claiming title to, or any interest in, real or personal

property, or both," against any person who may "claim to own the property, or any part of it, or to have any estate in it . . . adverse to the plaintiff, or against any person in whom the land records disclose any interest, lien, claim or title conflicting with the plaintiff's claim, title or interest, for the purpose of determining such adverse estate, interest or claim, and to clear up all doubts and disputes and to quiet and settle the title to the property. . . ." General Statutes § 47-31 (a). Furthermore, § 47-31 (a) provides: "Such action may be brought whether or not the plaintiff is entitled to the immediate or exclusive possession of the property." Thus, under § 47-31, any person having *any* interest in real property that is affected by a mortgage, the validity of which is being challenged, may bring an action to quiet title and seek to have the court declare the mortgage invalid.

In the present case, the court properly determined that "there is no dispute that at the time of the filing of the lawsuit [the plaintiff] owned unit D. As to unit A, there exists a sufficient interest in the property based upon the contract to sell to Rotundo Developers, and the deeds to and from Rotundo Developers, which, if both are recorded, would leave [the plaintiff] as the record owner." This interest in unit A, as found by the court, was that "although the title is presently in Rotundo Developers, [the plaintiff] has retained an interest in the property because there exists a quitclaim deed back to [the plaintiff], which is being held in escrow pending the outcome of this case, and because it is contractually obligated to sell unit A to Rotundo Developers by warranty deed, which [the plaintiff] warranted it could deliver. It is unable to do so because the parcel is encumbered by the challenged mortgages. Moreover, Rotundo Developers cannot obtain the needed financing in order to fund the project and compensate [the plaintiff] with net proceeds . . . unless [the plaintiff] is able to convey clear title."

According to the defendants, the plaintiff did not establish a prima facie case as to the causes of actions alleged because the plaintiff failed to introduce evidence to support the allegation in its original complaint that it was the "absolute owner in possession" of the property. The defendants contend that because unit A was deeded by the plaintiff to Rotundo Developers, prior to instituting the action, the plaintiff did not have an ownership interest in unit A at the time it filed its complaint. As to unit D, the defendants argue that although the plaintiff owned unit D at the time it commenced the action, this ownership interest ceased during the action because Calpitano, purportedly on behalf of the plaintiff, deeded unit D to another company of his creation, Fountain Pointe Holdings, LLC. For the reasons we will discuss, we disagree with the defendants.

First, as to unit D, it is undisputed that the plaintiff owned unit D when it commenced this action. The parties stipulated that the transfer of unit D occurred by way of a quitclaim deed on June 9, 2010, after this action was commenced on May 10, 2010. The defendants argue, however, that under *Southbury* v. *American Builders, Inc.*, 162 Conn. 633, 295 A.2d 566 (1972), a party may lose standing by virtue of events occurring after the commencement of a proceeding. *Southbury* is inapplicable to this case, as it involves parties who lost their right to appeal after judgment was rendered against them because they no longer had any interest in the premises due to a foreclosure after the judgment but before the appeal commenced. Id., 634. In this case, the transfer of unit D occurred after the current action commenced. We agree with the court's determination that "[t]he fact that Calpitano then deeded the property to a company controlled by himself . . . does in no way remove the plaintiff from having in the very least

an *interest* in the property sufficient to give it standing to bring this suit." (Emphasis in original.)

Second, as to unit A, we agree with the court that, at the very least, the plaintiff had a cognizable interest in unit A based on the contract to sell the property to Rotundo Developers and the deeds to and from Rotundo Developers, which, if recorded, would leave the plaintiff as the record owner of unit A. This convoluted transaction with Rotundo Developers was created by the plaintiff only to preserve its deal until the plaintiff could successfully discharge the challenged mortgages and deliver the warranty deed as contractually obligated. The fact that the recording of the deed from Rotundo Developers back to the plaintiff was conditioned on the outcome of this action does not change the essential truth that the plaintiff is "claiming title to, or *any interest* in" real property and may maintain an action to quiet title under § 47-31 (a). (Emphasis added.) General Statutes § 47-31 (a). We conclude that the court properly concluded that the plaintiff had standing and, therefore, properly denied the defendants' motion to dismiss for failure to make out a prima facie case.

The defendants also argue that the judgment of the court should be reversed because the plaintiff's complaint failed to comply with the requirements of § 47-31 (b) in that it misstated the plaintiff's interest in the property, did not describe how the plaintiff acquired its interest and failed to name adverse parties. A plaintiff seeking to quiet title in a property must "describe the property in question and state the plaintiff's claim, interest or title and the manner in which the plaintiff acquired the claim, interest or title and shall name the person . . . who may claim the adverse estate or interest. . . ." General Statutes § 47-31 (b).

The court concluded that the plaintiff could proceed because "[t]he pleadings as a whole advised the defendants of the claims being made by the plaintiff." The

court further found that "[t]o bar the plaintiff because it did not slavishly follow the statutory formula is a hypertechnical interpretation of our statutes." Our review of the record indicates that the defendants have failed to demonstrate any impropriety in the court's determination that the plaintiff substantially complied with the pleading requirements. "Our Supreme Court repeatedly has enjoined us to eschew applying the law in such a hypertechnical manner that we would elevate form over substance." *Thurlow* v. *Hulten*, 130 Conn. App. 1, 10, 21 A.3d 535, cert. denied, 302 Conn. 925, 28 A.3d 337 (2011).

V

The defendants' fifth claim implicates the requirement of § 47-31 (b) to name all parties with an interest adverse to that of the plaintiff. Specifically, they argue that Rotundo Developers had an adverse interest in the property and that because it was never joined as a party to the action, the court's adjudication of title to the property is void. We disagree.

The defendants' claim implicates the court's subject matter jurisdiction, over which our review is plenary. "A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ." (Citation omitted; internal quotation marks omitted.) *98 Lords Highway, LLC* v. *One Hundred Lords Highway, LLC*, 138 Conn. App. 776, 783, 54 A.3d 232 (2012). "It is well established, however, that an action cannot be

defeated due to the nonjoinder or misjoinder of parties, and failure to notify or join indispensable parties does not deprive a court of subject matter jurisdiction. General Statutes § 52-108 . . . . Instead, the remedy for nonjoinder of parties is by motion to strike. . . . The nonjoinder of a party will generally implicate the court's subject matter jurisdiction and require dismissal, however, if a statute mandates the naming and serving of the party." (Citations omitted.) *D'Appollonio* v. *Griffo-Brandao*, 138 Conn. App. 304, 313–14, 53 A.3d 1013 (2012).

The defendants make this claim under § 47-31 (b), which provides in relevant part that the complaint in a quiet title action "shall describe the property in question and state the plaintiff's claim, interest or title and the manner in which the plaintiff acquired the claim, interest or title and *shall name the person or persons who may claim the adverse estate or interest. . . .*" (Emphasis added.) The defendants' argument that Rotundo Developers was an indispensable party to this action stems from the quitclaim deed for unit A given by the plaintiff to Rotundo Developers. The defendants argue that the court's judgment invalidating the mortgages directly affects unit A, in which Rotundo Developers has an interest, and, therefore, Rotundo Developers is an indispensable party. Here, the court expressly considered the defendants' claim that Rotundo Developers was a necessary party and found that "[s]ince this action is being brought to quiet title on the property by declaring the mortgages invalid, it would appear the only party that has an adverse interest would be [the defendants]. Rotundo Developers has no adverse interest in declaring these mortgages invalid . . . ."

We agree with the court's determination that Rotundo Developers is not an adverse party relative to the plaintiff's claim to have the mortgages declared invalid. The

plaintiff and Rotundo Developers shared the same interest in seeking to remove these mortgages from the land records. Although Rotundo Developers did receive a quitclaim deed to unit A, it also had executed a quitclaim deed back to the plaintiff and had an agreement holding the deed in escrow pending the outcome of the action. If the mortgages were declared invalid, then Rotundo Developers would not record its quitclaim deed back to the plaintiff and the original intended conveyance could be consummated. If, instead, the plaintiff was unsuccessful in discharging the mortgages, Rotundo Developers, per the agreement, would record its deed, leaving the plaintiff as owner of the property, still encumbered by the defendants' mortgages. Thus, Rotundo Developers did not hold an interest adverse to the plaintiff's claim seeking to have the mortgages declared invalid.

The defendants cite to *Lake Garda Improvement Assn.* v. *Battistoni*, 155 Conn. 287, 231 A.2d 276 (1967), for the proposition that because Rotundo Developers had obtained a quitclaim deed from the plaintiff, it was an indispensable party. In *Lake Garda Improvement Assn.*, the plaintiff sought to quiet title, pursuant to § 47-31, to a piece of disputed beach property, but our Supreme Court held that because the plaintiff had executed a quitclaim deed to the property in favor of a water company and failed to join the water company as a necessary party with an adverse interest, the judgment in the plaintiff's favor was void. Id., 294. The present case is distinguishable, because, unlike the water company in *Lake Garda Improvement Assn.*, which was in a position to claim an interest adverse to the plaintiff seeking to quiet title, Rotundo Developers' interests were aligned with that of the plaintiff by virtue of the matching quitclaim deed it held in escrow.

Furthermore, even if we were to agree with the defendants that Rotundo Developers was an adverse party,

this court recently reaffirmed that, although § 47-31 (b) requires the joining of adverse parties, the failure to join such parties does not require reversal. See *D'Appollonio* v. *Griffo-Brandao*, supra, 138 Conn. App. 315, quoting *Swenson* v. *Dittner*, 183 Conn. 289, 292, 439 A.2d 334 (1981) ("[Section 47-31] requires the plaintiffs to name the person or persons who may claim [an] adverse estate or interest. . . . So that the trial court can make a full determination of the rights of the parties to the land, an action to quiet title is brought against persons who claim title to or have an interest in the land. . . . Only the parties to an action to quiet title are bound by the judgment. . . . The failure to include [parties who may claim an interest] . . . is not error because the decision to join a party in a suit to quiet title is made by the plaintiff." [Citations omitted.]). Thus, whether to join Rotundo Developers in the action was a decision to be made by the plaintiff, and the defendants cannot claim it as error.

VI

We now turn to the defendants' final claim, namely, that the court improperly determined that they are liable for slander of title under § 47-33j.[12] Specifically, the defendants argue that the plaintiff failed to prove (1) that it demanded that the mortgages be removed from the land records, (2) the publication of the mortgages

[12] The defendants challenge the court's determination that the plaintiff proved slander of title against all three defendants, but specifically argue that because Liliana Calpitano and the Trust were not involved in the actual recording of the mortgages, the court improperly concluded that all the defendants were liable for slander of title. We are unpersuaded by this claim because the slander of title count was brought against Rick Calpitano and Liliana Calpitano for executing the challenged mortgages and against the Trust for the filing of the lis pendens on the plaintiff's property. The trial court's memorandum of decision demonstrates that the court implicated Liliana Calpitano in the same "scheme to create these false mortgages" as her brother and that the Trust was implicated, not for the recording of the false mortgages, but for the filing of the lis pendens.

was made with malice or reckless disregard for the truth and, finally, (3) that there was any damage to the value of the property as a result of the mortgages. Although we respond to each of these claims separately, we turn first to the parameters of our review of these claims.

"[O]ur standard of review when the legal conclusions of the trial court are challenged is plenary, and requires us to determine whether the conclusions reached are legally and logically correct and whether they find support in the facts set forth in the memorandum of decision." *Elm Street Builders, Inc.* v. *Enterprise Park Condominium Assn., Inc.*, 63 Conn. App. 657, 669, 778 A.2d 237 (2001). Under § 47-33j, "No person may use the privilege of recording notices . . . for the purpose of slandering the title to land. In any action brought for the purpose of quieting title to land, if the court finds that any person has recorded a claim for that purpose only, the court shall award the plaintiff all the costs of the action, including such attorneys' fees as the court may allow to the plaintiff, and in addition, shall decree that the defendant asserting the claim shall pay to the plaintiff all damages the plaintiff may have sustained as the result of such notice of claim having been so recorded." To establish a case of slander of title, a party must prove "the uttering or publication of a false statement derogatory to the plaintiff's title, with malice, causing special damages as a result of diminished value of the plaintiff's property in the eyes of third parties. The publication must be false, and the plaintiff must have an estate or interest in the property slandered. Pecuniary damages must be shown in order to prevail on such a claim." (Internal quotation marks omitted.) *Gilbert* v. *Beaver Dam Assn. of Stratford, Inc.*, 85 Conn. App. 663, 672–73, 858 A.2d 860 (2004), cert. denied, 272 Conn. 912, 866 A.2d 1283 (2005).

A

The defendants argue that, in order to maintain an action for slander of title, the plaintiff was first required to demand that the mortgages be removed from the land records.[13] For this proposition, the defendants rely on *Bellemare* v. *Wachovia Mortgage Corp.*, 284 Conn. 193, 931 A.2d 916 (2007), in which our Supreme Court described slander of title as "a falsehood published to third parties that is *not withdrawn after a demand by the titleholder*, which impugns the basic integrity or creditworthiness of an individual or a business. . . . It follows, therefore, that A may bring an action for slander of title when B improperly records a mortgage against the deed to A's home and *does not correct such an impropriety upon A's demand.* Such an action lies in tort and is akin to an action for damages pursuant to [General Statutes] § 49-8." (Emphasis added.) Id., 202.

Although at first blush this language appears to be controlling, a closer examination reveals that the statements in *Bellemare* regarding slander of title were not germane to *Bellemare*'s holding and, therefore, were dicta. "It is well established that statements in prior cases that constitute dicta do not act as binding precedent." *Remax Right Choice* v. *Aryeh*, 100 Conn. App. 373, 378, 918 A.2d 976 (2007). "Dictum is generally defined as [a]n expression in an opinion which is not necessary to support the decision reached by the court. . . . A statement in an opinion with respect to a matter

---

[13] The plaintiff argues that this claim was only "briefly suggested" during the defendants' closing argument and was not distinctly raised, as is required for appellate review under Practice Book § 60-5. Although an appellate court is not bound to consider an issue "unless it was distinctly raised at the trial or arose subsequent to the trial"; Practice Book § 60-5; a review of the transcripts from the parties' closing arguments before the trial court reveals that the defendants' counsel specifically argued the *Bellemare* case and the plaintiff's failure to present evidence of a demand. Therefore, this claim was distinctly raised and we address it accordingly.

which is not an issue necessary for decision. . . . Ballentine's Law Dictionary (3d Ed. 1969). Our Supreme Court has instructed that dicta have no precedential value." (Internal quotation marks omitted.) *State* v. *Torres*, 85 Conn. App. 303, 320, 858 A.2d 776, cert. denied, 271 Conn. 947, 861 A.2d 1179 (2004).

We conclude that these statements are best understood in the context of the actual issue in *Bellemare*: whether to apply the three year statute of limitations applicable to tort actions to a claim for damages arising from the defendant's failure to provide a release of mortgage to the plaintiff pursuant to § 49-8. *Bellemare* v. *Wachovia Mortgage Corp.*, supra, 284 Conn. 195–96. Section 49-8 requires that a release be executed and delivered within sixty days of the date of a written request for a release of, inter alia, a satisfied mortgage or an ineffective attachment, lis pendens or lien. The court's discussion of slander of title analogized the similarities between an action for damages under § 49-8 with the common-law tort of slander of title in order to bolster its holding that the three year tort statute of limitations was applicable. Id., 204. We do not interpret our Supreme Court's decision in *Bellemare* as the defendants do, namely, to have affirmatively required, as an additional element to a slander of title action, that the plaintiff first demand that the mortgages be withdrawn.

Furthermore, our Supreme Court's decision in *Bellemare* does not cite to § 47-33j, the statutory basis upon which the plaintiff in the present case seeks relief. Under § 47-33j, a plaintiff need only prove that the defendant has recorded a claim "for the purpose of slandering the title to land. . . ." We do not consider our Supreme Court's discussion of slander of title in *Bellemare* to have intended to "lay down in positive form" an additional element to a statutory slander of

title cause of action. *Sleavin* v. *Greenwich Gynecology & Obstetrics, P.C.*, 6 Conn. App. 340, 345, 505 A.2d 436 ("[o]ur Supreme Court has acknowledged that dictum is not binding because it is made with no intent to lay down in positive form a rule of law" [internal quotation marks omitted]), cert. denied, 199 Conn. 807, 508 A.2d 32 (1986). Therefore, the plaintiff was not required to prove that it demanded that the defendants release the mortgages in order to prove slander of title.

B

The defendants also challenge the court's conclusion that the mortgages and the lis pendens had been filed with reckless disregard for the truth. We are not persuaded.

As there is little appellate case law regarding the actual malice element of a slander of title claim, we turn to the precedents of common-law slander to guide our analysis. "Whether a defendant has knowledge of the falsity of a defamatory statement is a question within the province of the trier of fact. . . . The proper inquiry is whether a defendant believes, honestly and in good faith, in the truth of his statements and whether he has grounds for such belief. . . . Notably, however, a trial court is not required merely to accept a defendant's self-serving assertion that he published a defamatory statement without knowing that it was false." (Citations omitted.) *Gambardella* v. *Apple Health Care, Inc.*, 291 Conn. 620, 638, 969 A.2d 736 (2009). "[A]ctual malice requires a showing that a statement was made with knowledge that it was false or with reckless disregard for its truth. . . . A negligent misstatement of fact will not suffice; the evidence must demonstrate a purposeful avoidance of the truth. . . . Further, proof that a defamatory falsehood has been uttered with bad or corrupt motive or with an intent to inflict harm will not be sufficient to support a finding of actual malice . . .

although such evidence may assist in drawing an inference of knowledge or reckless disregard of falsity." (Citations omitted; internal quotation marks omitted.) Id., 637–38.

The defendants' bare assertion that they acted reasonably and that there was no evidence to show that they actually knew they were acting improperly when they recorded and then sought to foreclose upon the mortgages is insufficient to challenge the court's determination of malice. "A trial court must evaluate a defendant's testimony, including whether there are grounds to support it, and is not constrained simply to accept a defendant's assertion that he did not know that his statement was false. . . . It is axiomatic that a defendant who closes his eyes to the facts before him cannot insulate himself from a defamation charge merely by claiming that he believed his unlikely statement." (Citations omitted.) Id., 641–42. The court here considered the e-mail from Calpitano to Rotundo in which Calpitano claimed that he would make sure that the deal from the plaintiff to Rotundo Developers never closed and that he would make it his personal mission to "legally bury [Rotundo] for years to come." The court also found it relevant that four days after Calpitano sent the e-mail the mortgages were recorded, despite their purportedly having been made three years earlier. See *Holbrook* v. *Casazza*, 204 Conn. 336, 346–47, 528 A.2d 774 (1987) (evidence of bad faith may support inference of knowledge or reckless disregard of truth), cert. denied, 484 U.S. 1006, 108 S. Ct. 699, 98 L. Ed. 2d 651 (1988). Additionally, the defendants' inability to provide evidence that there was valid consideration for the mortgages further supports the court's determination that "Calpitano and his sister concocted some scheme to create these false mortgages, and this e-mail evidences his reckless disregard as to the truth."[14]

---

[14] The defendants also argue that the court's finding that "the filing of the lis pendens was done with a reckless disregard as to the truth" is clearly

## C

Last, the defendants contend that the plaintiff failed to prove that there was any damage to the value of the property as a result of the mortgages. We disagree.

Here, the court heard evidence that the concealment of the creation of the false mortgages and their subsequent recording had caused the plaintiff to lose out on the proceeds of a $1.8 million sale of its property to Rotundo Developers. On the basis of this evidence, the court concluded that "[the plaintiff] suffered injury by not being able to provide a warranty deed to Rotundo Developers and therefore was in default of its obligation under the contract, and was required to prosecute this action to be able to deliver clear title and thereby collect the sales proceeds. . . . *This resulted in an economic loss to the plaintiff of approximately $1.8 million.*" (Emphasis added.) The court also noted that the only damages the plaintiff was *claiming* were the costs and attorney's fees associated with the prosecution of the quiet title action and defending against the foreclosure actions brought by the defendants.

The defendants argue that because the plaintiff elected to pursue only a claim for damages on the basis of the attorney's fees incurred to defend its title to the property, as opposed to the entire $1.8 million it lost in sale proceeds, it failed to prove damages "as a result of diminished value of the plaintiff's property in the eyes of third parties." (Emphasis omitted; internal quotation marks omitted.) See *Gilbert* v. *Beaver Dam Assn. of*

---

erroneous because a lis pendens is merely a notice of litigation affecting real property and it was undisputed that the foreclosure actions existed. See footnote 2 of this opinion. The defendants fail to understand that the court's conclusion about the notice of lis pendens was not that there were no foreclosure actions in existence, but instead that the defendants' conduct in seeking to foreclose recklessly disregarded the falsity of the mortgages.

*Stratford, Inc.,* supra, 85 Conn. App. 672. The defendants fail to appreciate the difference between the plaintiff's having proved pecuniary loss as an element of its slander of title claim, namely, the anticipated proceeds of the sale to Rotundo Developers, and the damages it sought from the defendants pursuant to § 47-33j.

Section 47-33j provides in relevant part: "In any action brought for the purpose of quieting title to land, if the court finds that any person has recorded a claim for [the purpose of slandering the title] only, the court shall award the plaintiff all the costs of the action, including such attorneys' fees as the court may allow to the plaintiff, and in addition, shall decree that the defendant . . . shall pay to the plaintiff all damages the plaintiff may have sustained as the result of such notice of claim having been so recorded." We see no reason to determine, contrary to the court's determination, that because the plaintiff elected to pursue its claim of damages only on the basis of its attorney's fees this negates the evidence demonstrating that it suffered pecuniary loss so as to prove slander of title. Accordingly, we conclude that the court's ruling was legally and logically correct, and was properly supported by the facts.

The judgment is affirmed.

In this opinion the other judges concurred.