FLORENCE KRONDES ET AL. *v.*
WILLIAM O'BOY, SR., ET AL.
(12682)

O'CONNELL, FOTI and SPEAR, Js.

Argued January 5—decision released April 4, 1995

*Andrew F. Fink,* for the appellants-appellees (defendants).

*Ridgely W. Brown,* with whom was *Benjamin E. Gershberg,* for the appellee-appellant (plaintiff).

SPEAR, J. The defendants, William O'Boy, Sr., and William O'Boy, Jr., appeal from a judgment rendered in favor of the plaintiff[1] in the amount of $259,896 on the plaintiff's complaint of breach of a contract to sell certain real estate. The defendants claim that the trial court (1) improperly denied their motions for directed verdicts because (a) a counteroffer by O'Boy, Sr., was never accepted by the plaintiff and, therefore, there was no contract, (b) there was no agreement as to the identity of the parties to the contract and (c) O'Boy, Jr., could not have formed a contract with James Krondes because James Krondes died before O'Boy, Jr., signed the alleged contract, and (2) improperly instructed the jury that it could consider whether O'Boy, Sr., conditioned his acceptance of the plaintiff's offer on the change that he made in the proposed contract. The plaintiff's cross appeal asserts that the trial court improperly denied her motion to set aside the verdict for the defendants on the fraud count of the plaintiff's complaint. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The plaintiff, Florence Krondes, and her husband, James Krondes, entered into negotiations to purchase certain real estate from the defendant O'Boy, Sr. The property had been damaged by fire, and O'Boy, Sr., was to renovate the property as part of the agreement. The total agreed upon price was $550,000. The Krondeses forwarded a proposed contract, signed by them, and a check in the amount of $49,500[2] to O'Boy, Sr., in late January or early February, 1986. O'Boy, Sr., crossed out the words "such partition" from the following sentence in the proposed contract: "This shall

---

[1] The plaintiff, Florence Krondes, pursued this claim both individually and as executrix of her husband's estate. For purposes of this opinion, the word plaintiff will refer to Krondes in both capacities.

[2] This sum brought the plaintiff's total deposit to $55,000. A binder deposit of $5500 had been made earlier.

include exterior stucco, interior floor, ceiling and wall finishing, new exterior front and rear doors for middle section, bathrooms in each of the three units and such partition work as purchaser requires." O'Boy, Sr., signed the document and returned it to the Krondeses' attorney sometime in February, 1986. At that time, O'Boy, Sr., owned an undivided one-half interest in the property with his son, O'Boy, Jr.

For approximately one year after O'Boy, Sr., signed the document, Florence Krondes and O'Boy, Sr., were in contact regarding the progress of the construction work on the property. Such discussions continued after James Krondes died on May 8, 1986. Florence Krondes and O'Boy, Sr., also discussed the extension of the Krondeses' mortgage commitment that was necessitated by the delay in construction.

On March 14, 1987, O'Boy, Sr., conveyed his interest in the property to O'Boy, Jr. On March 30, 1987, O'Boy, Jr., signed the document that had previously been signed by the Krondeses and O'Boy, Sr. The document was signed in the presence of O'Boy, Sr., Florence Krondes and the Krondeses' attorney with the full knowledge of O'Boy, Sr.

In August, 1987, the O'Boys conveyed the property to Paul Featherton, and, thereafter, Florence Krondes brought suit against both O'Boys in her individual capacity and as executrix of the estate of James Krondes. The jury returned verdicts for the plaintiff on the breach of contract counts but not the fraud count, and the court rendered judgment thereon. This appeal and cross appeal ensued.

The defendants admitted in their original answer that O'Boy, Sr., had entered into a contract for the sale of the property. Shortly before trial, the defendants retained new counsel and filed an amended answer that put the plaintiff to her proof as to the existence of a

contract. The original answer was put into evidence as an exhibit for the plaintiffs. The jury returned answers to interrogatories with the verdict stating that it found an agreement between the Krondeses and both O'Boys. The jury also specifically found that although O'Boy, Jr., had "defrauded the plaintiff" by his statements or conduct, the plaintiff Florence Krondes had not relied on such statements or conduct to her detriment. The jury answered no to the interrogatory that asked whether O'Boy, Sr., had defrauded the plaintiff.

I

The defendants claim that the trial court improperly denied their motions for a directed verdict. They argue, on the basis of three alternative theories, that no contract existed between the Krondeses and O'Boy, Sr., or between either of the Krondeses and O'Boy, Jr. After the verdict was rendered, the defendants filed timely motions to set aside the verdict and for judgment notwithstanding the verdict in accordance with their motions for directed verdict.

"At the outset, we note the appropriate standard of review. In considering the trial court's denial of a motion for directed verdict, we view the evidence in the light most favorable to the prevailing party. . . . Nevertheless, a verdict will be set aside and judgment directed if we find that the jury could not reasonably and legally have reached their conclusion." (Citations omitted; internal quotation marks omitted.) *Krawczyk* v. *Stingle*, 208 Conn. 239, 244, 543 A.2d 733 (1988). "A directed verdict is justified if on the evidence the jury could not reasonably and legally have reached any other conclusion." (Internal quotation marks omitted.) *Gore* v. *People's Savings Bank*, 35 Conn. App. 126, 129, 644 A.2d 945, cert. granted, 231 Conn. 923, 648 A.2d 162 (1994).

## A

The defendants first argue that no contract existed because the counteroffer by O'Boy, Sr., was never accepted by the Krondeses. Viewing the evidence in the light most favorable to the plaintiff, we conclude that the jury could have found that a contract existed between the Krondeses and O'Boy, Sr. The jury reasonably could have found that the acts of Florence Krondes manifested assent to and acceptance of the counteroffer by O'Boy, Sr. Manifestation of assent to a contract "may be made wholly or partly by written or spoken words or by *other acts or by failure to act.*" (Emphasis added; internal quotation marks omitted.) *Ubysz* v. *DiPietro*, 185 Conn. 47, 51, 440 A.2d 830 (1981). In this case, discussions between Florence Krondes and O'Boy, Sr., concerning the progress of the construction work on the site and the extension of the Krondeses' mortgage commitment was evidence that the parties had mutually assented to a contract. "In order to form a binding and enforceable contract, there must exist an offer and an acceptance based on a mutual understanding by the parties. . . . The mutual understanding must manifest itself by a mutual assent between the parties." (Citation omitted.) *Steinberg* v. *Reding*, 24 Conn. App. 212, 214, 587 A.2d 170 (1991). The conduct of the parties after the document was signed by the Krondeses and O'Boy, Sr., his failure to return the $55,000 deposit and his admission that there was a contract were sufficient evidence from which the jury reasonably could have found mutual assent to a contract.

## B

The defendants next claim that they had no contractual obligation because there was no evidence that O'Boy, Sr., ever agreed to O'Boy, Jr.'s becoming a

party to the contract. The defendants correctly assert that "the identities of the contracting parties must be reasonably certain." (Internal quotation marks omitted.) *Robert T. Reynolds Associates, Inc.* v. *Asbeck*, 23 Conn. App. 247, 250, 580 A.2d 533 (1990). This proposition does not help the defendants, however, because the evidence left virtually no room for any dispute as to the identities of the parties to the contract. Evidence that O'Boy, Sr., had transferred his interest in the property to O'Boy, Jr., after signing the contract, and that the contract had been presented to and signed by O'Boy, Jr., in the presence and with the knowledge of O'Boy, Sr., was sufficient for the jury to find that O'Boy, Sr., had assented to O'Boy, Jr.'s becoming a party to the contract.

C

The defendants assert that O'Boy, Jr., could not have entered into a contract with James Krondes because James Krondes died on May 8, 1986, and his "offer" expired upon his death.[3] The defendants have failed to present a record that is adequate to review this issue. We cannot ascertain, on this record, whether the plaintiff was acting solely as the executrix of James Krondes' estate or both as executrix and in her individual capacity when she presented the contract to O'Boy, Jr., for his signature. Practice Book § 4061 provides: "It is the responsibility of the appellant to provide an adequate record for review." Because the appellant has failed to provide a proper record, we decline to review this claim.[4]

---

[3] It is undisputed that O'Boy, Jr., signed the contract on March 30, 1987, nearly one year after James Krondes' death.

[4] Even if O'Boy, Jr., were to prevail on this claim, we discern no practical relief that would be available to him in light of our affirmance of the judgment in favor of Florence Krondes, individually, against him. If he prevailed on this claim the amount of the judgment and his liability to pay that amount would not change. The only difference would be that he would be obligated to pay Florence Krondes, individually, rather than individually and as executrix of the estate of James Krondes.

## II

The defendants' last claim is that the trial court improperly instructed the jury that it must decide whether O'Boy, Sr., conditioned his "acceptance of the contract" on the changes he had made to the language of the contract. We decline to review this claim because it is not adequately briefed.[5]

In support of this claim, the defendants refer to one of the two cases cited in their brief, *Cavallo* v. *Lewis*, 1 Conn. App. 519, 473 A.2d 338 (1984). They assert in their brief, "As *Cavallo* teaches, any departure in the terms of an offer invalidates the offer."

*Cavallo* v. *Lewis*, supra, 1 Conn. App. 519, is a per curiam opinion without detailed facts that we could compare to the circumstances here. No other authority or analysis is offered. "We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed." *Latham & Associates, Inc.* v. *William Raveis Real Estate, Inc.*, 218 Conn. 297, 300, 589 A.2d 337 (1991); see also Practice Book § 4065; *State* v. *Hernandez*, 204 Conn. 377, 382, 528 A.2d 794 (1987).

## III

On the cross appeal, the plaintiff claims that the trial court improperly refused to set aside the verdict for the defendants on the fraud count of the complaint. They assert that the evidence, particularly the testimony by O'Boy, Jr., that he never intended to convey the property to the plaintiffs, overwhelmingly proved fraud.

We review the trial court's action in granting or denying a motion to set aside a verdict by an abuse of dis-

---

[5] Even if the defendants are correct, assent to the counteroffer by O'Boy, Sr., could have been found by the jury as discussed in part I of this opinion.

cretion standard. *State* v. *Hammond,* 221 Conn. 264, 270, 604 A.2d 793 (1992); *Jeffries* v. *Johnson,* 27 Conn. App. 471, 475, 607 A.2d 443 (1992). The jury found that although O'Boy, Jr., had made misrepresentations to the plaintiff by his words and conduct, the plaintiff never relied on such words and conduct. The jury found no misrepresentation by O'Boy, Sr. We conclude that the jury could reasonably have concluded as it did on the fraud count. Therefore, the trial court did not abuse its discretion in denying the plaintiff's motion to set aside the verdict.

The judgment is affirmed.

In this opinion the other judges concurred.