[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an application for a prejudgment remedy. General Statutes 52-278a et seq. The plaintiff, The Mazza Consulting Group, Inc. (Mazza), is a corporation providing consulting services to building contractors for claims related to construction projects. The defendant, M O Construction Co., Inc. (M O), is a construction company which was involved with a sewer project in the town of New Milford. M O encountered unexpected additional rock while acting as an excavating contractor for a sewer extension. The defendant made a claim against the town for an additional sum of approximately $515,000.00. The plaintiff assisted the defendant in making this claim which was eventually settled directly between M O and New Milford for $107,000.
The plaintiff's affidavit in support of an attachment and its unsigned complaint allege that the plaintiff prepared, signed and forwarded to the defendant a proposed agreement dated March 18, 1996. This document provided that the plaintiff would act as "engineering counsel in connection with the preparation, negotiation and collection of certain claims." The plaintiff was to be paid $500 a week, beginning March 1, 1996, for ten weeks, plus a "success fee of 25% of all settlement offers accepted by the [defendant]." The defendant did not sign this contract, but did pay the $500 fee a week to the plaintiff for ten weeks as called for in the contract. The plaintiff claims that it is CT Page 2320 entitled to a success fee of 25% of the $197,300 collected by the defendant from New Milford.
The defendant refuses to pay the plaintiff for several reasons. The first is that the president of the plaintiff corporation, Peter I. Mazza, held himself out as an professional engineer, but was not licensed or permitted to do so in this state, and therefore the alleged contract between the plaintiff and the defendant is illegal and unenforceable. Second, the defendant asserts that it did not sign the contract and hence it is not binding. Third, the defendant claims that even if the plaintiff is entitled to a recovery on a quantum meruit basis, the amount demanded should be substantially reduced to reflect the actual time spent and the result achieved.
The standard for the granting of an attachment is well known. "[I]f the court, upon consideration of the facts before it and taking into account any defenses, counterclaims or set-offs, claims of exemption and claims of adequate insurance, finds that the plaintiff has shown probable cause that such a judgment will be rendered in the matter in the plaintiffs favor in the amount of the prejudgment remedy sought and finds that a prejudgment remedy securing the judgment should be granted, the prejudgment remedy applied for shall be granted as requested or as modified by the court." General Statutes § 52-278d (a)(4).
It is also axiomatic that "[p]rejudgment remedy proceedings do not address the merits of the action; they concern only whether and to what extent the plaintiff is entitled to have property of the defendant held in the custody of the law pending adjudication of the merits of that action. . . . [T]he trial court, vested with broad discretion, need determine only the likely success of the plaintiff's claim by weighing probabilities. . . . Civil probable cause constitutes a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a person of ordinary caution, prudence and judgment, under the circumstances, in advancing the action." (Citations omitted; internal quotation marks omitted.) Tyler v.Schnabel, 34 Conn. App. 216, 219-20, 641 A.2d 388 (1994).
The purported contract with the defendant refers to Mr. Mazza with the title, P. B., as does a letter to the town of New Milford written by the plaintiff on behalf of the defendant. Thus, according to the defendant, General Statutes §§ 20-299
and 20-302 are implicated. The first statute describes the CT Page 2321 occupation of a professional engineer and the latter prohibits any person not licensed from practicing engineering, or using a "title or description tending to convey the impression that he is a professional engineer."
The evidence disclosed that Mr. Mazza is a licensed professional engineer in Massachusetts, but not in this state. However, in this case, Mr. Mazza and his company were not hired to perform engineering services such as drawing plans, specifications or supervising construction. The defendant hired the plaintiff to utilize its expertise in construction and background in engineering to collect a debt owed it by New Milford, but the plaintiff was not practicing professional engineering in this state. Even though Mr. Mazza used the term "P.E." to describe accurately his occupation and academic degree, neither he nor his company attempted to deceive the defendant. The evidence indicated that the plaintiff was retained because it was familiar with the New Milford sewer project and the defendant knew that the plaintiff had negotiated successfully claims by other contractors relating to this project.
In this regard, E.I.S., Inc. v. Board of ProfessionalRegistration, 200 Conn. 145, 509 A.2d 1056 (1986), is instructive. In that case, the court was dealing with an "environmental analysis" prepared by E.I.S. "of a proposed business condominium . . . discussing the environmental effect of the development on a cranberry bog." The court measured these services against the definition of a "professional engineer" found General Statutes § 20-299 (1) as a person who engages in "engineering practices . . . such as consultation, investigation, evaluation, planning, design or responsible supervision of construction, . . . in connection with any . . . projects wherein the public welfare or the safeguarding of life, public health or property is concerned or involved." The court held that the services rendered by E.I.S. were "not involved in the design or planning of the . . . project. Rather, its report was merely incidental and preparatory to the project . . . [and] did not support a finding that the plaintiff's report was inimical to life, health, property or public welfare as required by § 20-299. . . ." Id., 150.
It seems evident that the services rendered by the plaintiff in this case do not fit within the definition of "professional engineer" in General Statutes § 20-299. The plaintiff was in essence a bill collector, albeit a skilled and experienced one, CT Page 2322 obviously employing engineering skills, but not acting as a professional engineer within the meaning of the statute. The life, health, property or public welfare of the citizens of New Milford or anywhere else for that matter were not threatened by the efforts of the plaintiff to collect money owed its client, the defendant in this action. Thus, the agreement between the plaintiff and the defendant was not illegal and therefore is enforceable.
In terms of the purported contract, the fact that the agreement was not signed is not fatal to the plaintiff's application. "Manifestation of assent to a contract may be made wholly or partly by written or spoken words or by other acts or by failure to act. . . . In order to form a binding and enforceable contract, there must exist an offer and an acceptance based on a mutual understanding by the parties. . . . The mutual understanding must manifest itself by a mutual assent between the parties." (Citations and internal quotation marks omitted).Krondes v. O'Boy, 37 Conn. App. 430, 434, 656 A.2d 692 (1995).
It seems evident that in this case there was a "mutual understanding," a meeting of the minds. The defendant paid in full the weekly fee of $500 called for in the contract, permitted the plaintiff to represent it before certain agencies, and permitted it to negotiate on its behalf to collect what the defendant believed was due it from the town of New Milford. Thus, these parties had a contract and the defendant is bound to live up to the terms thereof, including a "success fee of 25% of all settlement offers" accepted by the defendant. Without informing the plaintiff, the defendant began negotiating directly with the town of New Milford and later accepted a settlement offer from the town in the amount of $107,000. 25% of this number, less an agreed upon adjustment, is $24,325.
The plaintiff has demonstrated that it will likely prevail on its claim that it furnished consulting services pursuant to a contract with the defendant. The more credible evidence leads to the conclusion that the defenses offered by the defendant do not require the denial of a prejudgment remedy to the plaintiff. Of course, after discovery and a full hearing on the merits, a different result might well ensue, but, at this stage of the proceedings, the plaintiff has adequately demonstrated probable cause that it will prevail, notwithstanding the defenses by the defendants. Thus, a prejudgment remedy of attachment in the amount of $24,325 may issue in favor of the plaintiff against CT Page 2323 property of the defendant.
So Ordered.
Dated at Stamford, Connecticut, this 22nd day of February, 2000.
William B. Lewis, Judge