******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CHFA–SMALL PROPERTIES, INC. *v.*
HUSSEIN ELAZAZY ET AL.
(AC 36409)

Gruendel, Beach and Bear, Js.

*Argued January 7—officially released May 5, 2015*

(Appeal from Superior Court, judicial district of
Hartford, Sheridan, J.)

*John L. Giulietti*, with whom was *Corey A. Heiks*,
for the appellants-appellees (defendants).

*Joshua A. Hawks-Ladds*, with whom were *Jonathan
A. Kaplan* and, on the brief, *Zachary D. Schurin*, for
the appellee-appellant (plaintiff).

*Opinion*

GRUENDEL, J. The defendants, Hussein Elazazy, Fathia Rassyoun, Rafi Khan (also known as M. Rafi Khan), Farhana Khan, Melissa Torriero, Janusz Stolarczyk, Razin Syed (also known as Razin Syad), Rizuana Afag, and Eno Farm Tenant Association, Inc., appeal from the judgment of the trial court in favor of the plaintiff, CHFA–Small Properties, Inc., in its action to quiet title and for injunctive relief. The defendants claim that the court (1) improperly rejected their claim of ownership in real property known as Eno Farms and located at 1602 Hopmeadow Street in Simsbury (property), (2) lacked subject matter jurisdiction over the plaintiff's request to quiet title, and (3) improperly failed to conclude that certain attorneys violated rule 3.3 of the Rules of Professional Conduct. The plaintiff cross appeals, claiming that the court improperly determined that it had failed to establish its claims for slander of title. We affirm the judgment of the trial court.

The facts underlying this litigation largely are undisputed. In its comprehensive memorandum of decision, the court found: "[T]he property [at issue] has been the subject of much litigation. . . . In 1883, Amos Eno conveyed to the town of Simsbury [town] a 140 acre parcel of undeveloped land, with the requirement that the parcel be 'used for the occupation, maintenance and support of the town poor . . . and for no other purpose whatsoever.' In June, 1991, the [town] set aside approximately ten acres of the land donated by Eno to be used for low and moderate income housing. On June 28, 1991, the town leased that 10 acre parcel to CIL Housing, Incorporated (CIL Housing) for a term of ninety-nine years pursuant to a written 'Ground Lease.' The ground lease provided that the land would be used only for 'residential purposes and only for occupancy by low and moderate income residents,' pursuant to a plan of development . . . [to construct] approximately fifty housing units. The ground lease also provided that any and all improvements constructed, placed or maintained by CIL Housing on any part of the leased parcel during the term of the lease would be and would remain the property of CIL Housing.

"CIL Housing created the Eno Farms Limited Partnership [partnership] and assigned its interest in the ninety-nine year ground lease [thereto]. [The partnership] financed construction of what came to be known as 'Eno Farms' through the [Connecticut Housing Finance Authority (CHFA)] and the state of Connecticut. [The partnership] granted a first leasehold mortgage to CHFA to secure a loan in the amount of $1,495,000. [The partnership] also granted a second leasehold mortgage to the state of Connecticut to secure a loan in the amount of $2,782,000. The second leasehold mortgage was ultimately assigned by the state of Connecticut to CHFA. [The partnership] also qualified the project as a low

income housing project pursuant to the Internal Revenue Service code in order to obtain low income housing tax credits. [The partnership] thereafter sold those tax credits to outside investors.

"On December 28, 1993, the [partnership] executed a declaration of cooperative (declaration) making the project a limited equity leasehold cooperative pursuant to General Statutes § 47-242 (a) . . . . The [declaration] restricts the occupancy of the rental units to low and moderate income tenants, specifies income qualifications for those tenants, and sets forth restrictions on alienation of those units.

"Pursuant to the [declaration], the plaintiff created the Eno Farms Cooperative Association, Inc. (association). The association was comprised of members who occupied their respective units pursuant to continually renewing lease agreements for one year terms. Article IX of the [declaration] provides that the 'interests allocated to each unit' include a 'percentage interest in the association,' a 'percentage of liability for the common expenses,' and 'one vote in association matters.' Section 10.4 of the [declaration] provides that each member of the association is 'entitled to a proprietary lease representing such member's right to occupy a unit.' If a member of the association decides to vacate their rental unit while in good standing (a 'departing member'), section 10.2 of the [declaration] assigns a monetary value to the departing member's 'interest in the association and his or her right to occupy the unit during the year of membership.'

"In 2006, CHFA declared [the partnership] in default under the terms of the first and second leasehold mortgages. Thereafter, CHFA commenced a foreclosure action in the Superior Court, judicial district of Hartford . . . . The association appeared in that action, was represented by counsel, and, on behalf of its member tenants, opposed the foreclosure. Among other claims, the association argued that its members held an ownership interest in the property to be foreclosed.

"After a trial in which the parties fully, fairly and comprehensively litigated the question of ownership rights in [the property], the court, [*Hon. Robert Satter*, judge trial referee], issued its memorandum of decision on June 12, 2009. The court rejected all the special defenses asserted by the association, including its claim that 'the residents and the association are the owners of the project,' stating that the 'CHFA itself never promised home ownership to the association or residents [of the property], nor was there evidence of reliance upon a nonexistent promise. Finally, the evidence is that no conveyance by deed or otherwise conferred ownership of [the property] upon the association. . . . As a consequence, the court concludes that the association's special defense to the foreclosure counts has not been factually proven and is legally invalid.' The court

entered a judgment of strict foreclosure in favor of CHFA."[1] (Footnote omitted.) The court further ordered that the association be terminated. See *Connecticut Housing Finance Authority* v. *ENO Farms Ltd. Partnership*, Superior Court, judicial district of Hartford, Docket No. CV-07-5008995 (June 12, 2009) (48 Conn. L. Rptr. 66, 70) (foreclosure action).

The court further found that "CHFA acquired title to the property subject to the ground lease on August 12, 2009. On August 14, 2009, CHFA recorded a certificate of foreclosure in volume 780 at page 506 of the Simsbury land records. On October 26, 2009, CHFA assigned its interest in [the property] to [the plaintiff]. From that date forward, [the plaintiff] has been the owner of the [property], subject to the terms of the ground lease with the town . . . .

"In May of 2011, the plaintiff, acting through its property management agent, Konover Residential Corporation, commenced summary process actions against [inter alia] the defendant lessees Hussein Elazazy, [M. Rafi Khan], Melissa Torreiro, Janusz Stolarczyk, and Razin Syed in Superior Court, Housing Session, for the judicial district of Hartford. The defendant lessees appeared in each of those actions, were represented by counsel, and strongly contested the summary process actions. The defendant lessees renewed their claims of ownership of the [property] and title superior to that of the plaintiff. In two separate decisions, the court, *Oliver*, *J.*, rejected the defendant lessees' ownership claims. The court held that 'the issue of whether the defendants own the subject dwellings at [the property] was fully, fairly and apparently exhaustively litigated in a prior proceeding' and [was] necessarily determined in the court's judgment in [the foreclosure action]. Thus, the court held that the defendants were collaterally estopped from contesting ownership. But, even if collateral estoppel did not apply, the court, based on its own assessment of the evidence, held that the plaintiff 'established, by a fair preponderance of the evidence . . . ownership of the [property], including each of the subject dwellings, based on the evidence adduced at trial' and that the defendants 'failed to prove, by a fair preponderance of the evidence, a superior title to any of the subject premises.' " (Footnotes omitted.) See *Konover Residential Corp.* v. *Elazazy*, Superior Court, judicial district of Hartford, Housing Session, Docket No. HDSP-161528 (August 29, 2012) (summary process action). From that judgment, the defendant lessees appealed to this court, which affirmed the judgments of the trial court. *Konover Residential Corp.* v. *Elazazy*, 148 Conn. App. 470, 472, 87 A.3d 1114, cert. denied, 312 Conn. 908, 93 A.3d 592 (2014).

On June 6, 2012, the plaintiff entered into an agreement (agreement) with Equity Management Corporation (corporation) to sell its interest in the property

for $3,010,000. The agreement required the plaintiff to provide "good and marketable title" to the corporation. Soon after learning of that pending sale, the defendants, on June 27, 2012, filed a document titled "Verified Claim of an Interest of Any Kind of Land Preserving and Keeping Effective That Interest per [General Statutes] § 47-33f" (verified claim) on the Simsbury land records. Once alerted to that filing, the corporation refused to close on the property due to a lack of good and marketable title. The corporation further alleged that the plaintiff breached the agreement and therefore demanded a massive reduction in the purchase price and compensation for other damages.

As a result, the plaintiff demanded that the defendants withdraw or release the verified claim from the Simsbury land records. When the defendants refused, the plaintiff commenced the present action. Its complaint consisted of four counts. In the first count, the plaintiff sought to quiet title to the property pursuant to General Statutes § 47-31. The second and third counts set forth claims for slander of title on the part of the defendants due to their allegedly malicious filing of the verified claim on the Simsbury land records.[2] In the fourth and final count, the plaintiff sought an injunction ordering the defendants to (1) release the verified claim from the Simsbury land records and (2) not file "any new documents on the Simsbury land records that may cloud the plaintiff's title."

Following a trial, the court ruled in favor of the plaintiff on the quiet title and injunction counts. At the same time, the court ruled in favor of the defendants on the slander of title counts, concluding that the defendants did not act with the requisite malice. The court thus rendered judgment declaring "that the plaintiff . . . is the sole, absolute record owner of [the property], subject to a ground lease in favor of the [town], free of any claims of title by the [defendants]. Judgment will enter for the defendants on the second and third counts of the complaint. The court grants the plaintiff's request for a permanent injunction . . . . A permanent injunction shall and hereby does enter against [the defendants], enjoining and prohibiting them from recording any document or instrument on the Simsbury land records which asserts an interest in, makes a claim regarding, or purports to give notice concerning [the property]. In the event of any such filing, upon application by the plaintiff, the court may order a fine assessed against the defendants, jointly and severally, in an amount not to exceed $100 per day per violation. This order shall be effective against and bind all parties to this action, as well as their officers, agents, servants, employees, and attorneys." From that judgment, the defendants now appeal and the plaintiff cross appeals.

I

The defendants first claim that the court improperly

rejected their claim of ownership in the property. In response, the plaintiff submits that the court correctly determined that any claims regarding the defendants' ownership interest in, or equitable title to, that property are barred by the doctrine of collateral estoppel. We agree with the plaintiff.

The applicability of the doctrine of collateral estoppel presents a question of law, over which our review is plenary. *Testa* v. *Geressy*, 286 Conn. 291, 306, 943 A.2d 1075 (2008). That doctrine "expresses the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest." (Internal quotation marks omitted.) *Megin* v. *New Milford*, 125 Conn. App. 35, 38, 6 A.3d 1176 (2010). "[C]ollateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. . . . An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . To assert successfully the doctrine of issue preclusion, therefore, a party must establish that the issue sought to be foreclosed actually was litigated and determined in the prior action between the parties or their privies, and that the determination was essential to the decision in the prior case." (Internal quotation marks omitted.) *Rocco* v. *Garrison*, 268 Conn. 541, 555, 848 A.2d 352 (2004).

It is undisputed that, in the foreclosure action, the association raised and submitted for determination the question of whether residents at Eno Farms possessed an ownership interest in the property. In its memorandum of decision, the court stated that the association claimed that "the residents and the association are the owners of the project . . . ." The court also cited to an exchange with its counsel, Attorney John L. Giulietti,[3] at oral argument, in which the court sought to "understand the association's defense." In that colloquy, the court asked, "Now, if I understand what your defense is, as you just attempted to tell me, [the plaintiff] conspired . . . to deprive your clients of home ownership—is that," at which point Giulietti answered, "That's a correct statement, yes." After recounting this colloquy, the court then considered "the association's claims of ownership of Eno Farms" and ultimately rejected those claims, concluding that the association did not possess "a right to ownership" of the property. For that reason, the court concluded that the "association's special defense to the foreclosure counts has not been factually proven and is legally invalid." That determination plainly was essential to the court's decision to render a judgment of strict foreclosure on the property.

The remaining question, therefore, is whether that action was litigated between the parties or their privies.[4] *Rocco* v. *Garrison*, supra, 268 Conn. 555. We conclude

that the foreclosure action was litigated between the privies of the parties to this case. The plaintiff in the foreclosure action was the predecessor in title to the plaintiff in the present case. The association in the foreclosure case was composed, like the defendants in the present case, of members who occupied certain units of the Eno Farms property. Indeed, the court's memorandum of decision in the foreclosure action states that the president of the association at that time was Rafi Khan, one of the named defendants in this case. We therefore conclude that the foreclosure action was fully and fairly litigated between parties in privity with the plaintiff and the defendants to this case.

As such, the court properly determined that "the claims . . . questions and disputes regarding title to the [property] have been previously adjudicated . . . and their relitigation is barred by the application of the doctrine of collateral estoppel."[5] (Internal quotation marks omitted.) The court, therefore, properly rendered judgment in favor of the plaintiff on the quiet title and injunction counts of its complaint.

## II

The next claim raised by the defendants is difficult to decipher. In its principal appellate brief, the defendants state that the "[t]rial court lacked subject matter [jurisdiction] in a [General Statutes] § 47-33 quiet title action (to real estate) in which the town of Simsbury (a nonparty to this action, but in which the town attorney (Updike, Kelly & Spellacy, P.C.) filed an appearance on behalf of nonparty witness first selectwoman . . . in which the town as lessor was not only a 'necessary party' but an 'indispensable party,' i.e., the [town], which was the 'owner' of the underlying 'leased fee' in a quiet title action." After setting forth a standard of review, the defendants then note that they moved to dismiss the action on November 28, 2012, due to the plaintiff's alleged failure to comply with an "arbitration clause" contained in the ground lease.[6] The defendants' briefing of this claim then concludes by directing us to review the May 6, 2014 letter sent by Giulietti to the plaintiff's counsel and the law firm of Updike, Kelly & Spellacy, P.C., on behalf of the town and various other nonparties to this litigation.

Consisting of four sentences—including two dedicated to the standard of review—the claim amounts to little more than bald assertion. It is well established that "[w]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges

to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) *Russell* v. *Russell*, 91 Conn. App. 619, 634–35, 882 A.2d 98, cert. denied, 276 Conn. 924, 925, 888 A.2d 92 (2005). The paucity of analysis is particularly glaring in light of the fact that the defendants have utilized less than ten and one-half pages of the thirty-five permitted under our rules of practice. See Practice Book § 67-3.

"Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. . . . It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Citations omitted; internal quotation marks omitted.) *Amodio* v. *Amodio*, 247 Conn. 724, 727–28, 724 A.2d 1084 (1999).

The defendants have furnished no basis to conclude that the court lacked subject matter jurisdiction over the plaintiff's action to quiet title. The court specifically found that the plaintiff at all relevant times was "the sole, absolute record owner" of the property and that the defendants' filing of the verified claim on the Simsbury land records served to cloud title to that property. The plaintiff thus brought its action to quiet title pursuant to § 47-31,[7] which "provides a judicial mechanism for parties asserting competing interests in real or personal property to settle the issue of title." *Remington Investments, Inc.* v. *National Properties, Inc.*, 49 Conn. App. 789, 797, 716 A.2d 141 (1998). Furthermore, the trial court in the present case, in denying the defendants' November 28, 2012 motion to dismiss for lack of subject matter jurisdiction predicated on an alleged failure to include an indispensable party or to comply with an arbitration clause from the ground lease, rejected those claims.[8] We perceive no reason to depart from that determination.

### III

Even more inscrutable is the defendants' third claim, which appears to allege a violation of rule 3.3 of the Rules of Professional Conduct[9] on the part of the plaintiff's counsel, as well as Attorney Robert DeCrescenzo

of the law firm of Updike, Kelly & Spellacy, P.C., who filed an appearance in the trial court on appeal on behalf of town First Selectman Mary A. Glassman, a nonparty witness.[10] For two reasons, we do not review the merits of that allegation.

First, the defendants' two sentence analysis of that claim patently is deficient, as it merely directs this court to review a transcript and Giulietti's May 6, 2014 letter to the plaintiff's attorney and DeCrescenzo. Such does not constitute adequate briefing, rendering the claim abandoned. See *Robert J. Barnabei Contracting, LLC* v. *Greater Hartford Jewish Community Center, Inc.*, 127 Conn. App. 507, 517, 14 A.3d 461 (analysis rather than abstract assertion required to avoid abandoning issue by failure to brief issue properly), cert. denied, 301 Conn. 914, 19 A.3d 1260 (2011); *Krondes* v. *O'Boy*, 37 Conn. App. 430, 436, 656 A.2d 692 (1995) ("[w]e do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed" [internal quotation marks omitted]).

Second, the defendants' claim is largely identical to one recently rejected by this court in *Doctor's Associates, Inc.* v. *Windham*, 146 Conn. App. 768, 81 A.3d 230 (2013). As this court explained: "[I]t appears that [the defendant and his counsel], essentially, are attempting to fault [the plaintiff's counsel] for not protecting [the defendant's] interests in the face of their nonfeasance, by accusing [the plaintiff's counsel] of violating rule 3.3 of the Rules of Professional Conduct by not telling the arbitrator about [the defendant's] alleged claims and defenses. We note that the Rules of Professional Conduct are not to be used in the way that [the defendant and his counsel] have used rule 3.3 in this appeal: As we previously have recognized, however, the rules governing the professional conduct of attorneys, without more, do not give rise to a cause of action. . . . [A] violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. . . . [N]othing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty." (Citations omitted; internal quotation marks omitted.) Id., 779–80. Accordingly, rule 3.3 furnishes no basis for the claim advanced by the defendants in the case.

## IV

In its cross appeal, the plaintiff maintains that the trial court improperly concluded that it had failed to establish its claims for slander of title. Specifically, the plaintiff contends that the court improperly determined that the defendants relied in good faith on the advice of their counsel and, thus, lacked the element of malice essential to those claims.[11]

"A cause of action for slander of title consists of the uttering or publication of a false statement derogatory to the plaintiff's title, with malice, causing special damages as a result of diminished value of the plaintiff's property in the eyes of third parties. The publication must be false, and the plaintiff must have an estate or interest in the property slandered. Pecuniary damages must be shown in order to prevail on such a claim." (Internal quotation marks omitted.) *Elm Street Builders, Inc.* v. *Enterprise Park Condominium Assn., Inc.*, 63 Conn. App. 657, 669–70, 778 A.2d 237 (2001). The court in the present case found the malice element of that action lacking.

This court recently detailed the parameters of the malice element of a slander of title action in *Fountain Pointe, LLC* v. *Calpitano*, 144 Conn. App. 624, 76 A.3d 636, cert. denied, 310 Conn. 928, 78 A.3d 147 (2013). We stated: "Whether a defendant has knowledge of the falsity of a defamatory statement is a question within the province of the trier of fact. . . . The proper inquiry is whether a defendant believes, honestly and in good faith, in the truth of his statements and whether he has grounds for such belief. . . . Notably, however, a trial court is not required merely to accept a defendant's self-serving assertion that he published a defamatory statement without knowing that it was false. . . . [A]ctual malice requires a showing that a statement was made with knowledge that it was false or with reckless disregard for its truth. . . . A negligent misstatement of fact will not suffice; the evidence must demonstrate a purposeful avoidance of the truth. . . . Further, proof that a defamatory falsehood has been uttered with bad or corrupt motive or with an intent to inflict harm will not be sufficient to support a finding of actual malice . . . although such evidence may assist in drawing an inference of knowledge or reckless disregard of falsity." (Citation omitted; internal quotation marks omitted.) Id., 655–56.

In its memorandum of decision, the court credited the testimony of the defendants in reaching its determination that they had not acted with malice in filing the verified claim on the Simsbury land records. The court stated in relevant part: "In response [to the slander of title counts], the defendants have asserted the special defense of 'advice of counsel,' namely, that as regards the content and the timing of the verified claim, they

relied upon the advice provided to them by [Giulietti], an attorney 'duly licensed in Connecticut for forty years.' . . . The testimony of several defendants makes it clear that they were fully aware of their factual circumstances in the wake of the dissolution of the cooperative and the summary process actions and had discussed them at length with [Giulietti]. They continued to believe they had *legal rights* based on the proprietary leases. . . . The court carefully assessed the testimony of the defendants at trial. All of the defendants credibly testified that they relied upon the advice of [Giulietti] in deciding to authorize the filing of the verified claim . . . . One defendant stated, 'we filed it . . . because we believed in our attorney.' Another specifically testified that the verified claim was 'filed under the advisement of [Giulietti] . . . [we] . . . followed what the attorney recommended.' Another defendant conceded that the verified claim was filed in her name, but maintained that 'my lawyer did it, I didn't.' Another defendant agreed with the plaintiff that 'we can't go against the law . . . but you need to ask our attorney why we [filed the verified claim].' The court views these defendants as common citizens who are unschooled in the law. They relied on the advice of their attorney as to the existence of a legal right and the best means to legally protect that right. Although that attorney's advice—objectively viewed by persons with legal training—was in many ways erroneous, misguided, and imprudent, the court does not believe that the lay defendants' reliance upon that advice was unreasonable or unwarranted. The defendants did not act with a bad or corrupt motive, they did not act with reckless disregard of the falsity of their statement, and they did not set out to inflict harm on the plaintiff."

In its appellate brief, the plaintiff repeatedly asserts that "the defendants' testimony as to the purpose for recording the verified claim and the basis for their ownership assertions was self-serving, not credible and should be disregarded." It thus argues that the court "erroneously credited the defendants' self-serving testimony and ignored the plaintiff's controlling evidence to the contrary." In so doing, the plaintiff misunderstands the applicable standard. Although the court is "not required merely to accept a defendant's self-serving assertion that he published a defamatory statement without knowing that it was false"; *Gambardella* v. *Apple Health Care, Inc.*, 291 Conn. 620, 638, 969 A.2d 736 (2009); our law does not prohibit a court from doing so. Indeed, the court, as trier of fact, was "free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *Jay* v. *A & A Ventures, LLC*, 118 Conn. App. 506, 514, 984 A.2d 784 (2009).

The determination of whether a defendant possesses knowledge of the falsity of a defamatory statement and believes, honestly and in good faith, in the truth of his

statements and the determination of whether he has grounds for such belief are factual questions to be resolved by the trier of fact. *Fountain Pointe, LLC* v. *Calpitano*, supra, 144 Conn. App. 655. "Questions of fact are subject to the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *Murtha* v. *Hartford*, 303 Conn. 1, 12–13, 35 A.3d 177 (2011).

The essence of the plaintiff's claim is that the court improperly credited the testimony of the defendants. "[I]t is well established that the evaluation of a witness' testimony and credibility are wholly within the province of the trier of fact. . . . Credibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude. . . . An appellate court must defer to the trier of fact's assessment of credibility because [i]t is the [fact finder] . . . [who has] an opportunity to observe the demeanor of the witnesses and the parties; thus [the fact finder] is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom." (Citation omitted; internal quotation marks omitted.) *Schoenborn* v. *Schoenborn*, 144 Conn. App. 846, 851, 74 A.3d 482 (2013).

It is axiomatic that "this court cannot retry the facts or pass on issues of credibility." *CitiMortgage, Inc.* v. *Gaudiano*, 142 Conn. App. 440, 449, 68 A.3d 101, cert. denied, 310 Conn. 902, 75 A.3d 29 (2013); see also *Montville* v. *Antonino*, 77 Conn. App. 862, 871, 825 A.2d 230 (2003) ("[c]ourts of appeal do not pass on the credibility of witnesses"). We therefore refuse to disturb the credibility determinations reached by the court in the present case. Under the applicable standard of review, this court inquires as to whether there is evidence in the record to substantiate the court's factual finding that the defendants lacked malice in filing the verified claim. In light of the aforementioned testimony, which expressly was credited by the court, we answer that query in the affirmative. The testimony of the defendants furnished an evidentiary basis for the court to conclude that the defendants relied in good faith on the advice of their counsel.[12] As such, the court properly concluded that, without the requisite showing of malice, the plaintiff could not establish its claims for slander of title.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] No appeal was taken from the court's June 12, 2009 judgment.

[2] The distinction between those similar counts is that the third count incorporates the allegations of the common-law slander of title action set forth in the second count and then further alleges a violation under General Statutes § 47-33j of the Marketable Title Act. That statute provides: "No person may use the privilege of recording notices under sections 47-33f and 47-33g for the purpose of slandering the title to land. In any action brought for the purpose of quieting title to land, if the court finds that any person has recorded a claim for that purpose only, the court shall award the plaintiff all the costs of the action, including such attorneys' fees as the court may allow to the plaintiff, and in addition, shall decree that the defendant asserting the claim shall pay to the plaintiff all damages the plaintiff may have sustained as the result of such notice of claim having been so recorded." Common to both causes of action for slander of title is the element of malice. See *Fountain Pointe, LLC* v. *Calpitano*, 144 Conn. App. 624, 652, 76 A.3d 636, cert. denied, 310 Conn. 928, 78 A.3d 147 (2013); *Elm Street Builders, Inc.* v. *Enterprise Park Condominium Assn., Inc.*, 63 Conn. App. 657, 669, 778 A.2d 237 (2001).

[3] Giulietti served as counsel to the association in the foreclosure action, as counsel to the defendants in the summary process action, and he appears on behalf of the defendants in the present action. Giulietti signed the verified claim that precipitated this latest round of litigation as both the attorney for the defendant lessees and as "Corporate Counsel" for the defendant Eno Farm Tenant Association, Inc.

[4] It is undisputed that the foreclosure action was litigated by different parties.

[5] We note that the court in the summary process action likewise rejected the defendants' claims of ownership in the Eno Farms property. Those defendants unsuccessfully challenged the propriety of that determination before this court. *Konover Residential Corp.* v. *Elazazy*, supra, 148 Conn. App. 478–79. The majority of the defendants in that summary process action—Hussein Elazazy, Fathia Rassyoun, Rafi Khan, Farhana Khan, Melissa Torriero, Janusz Stolarczyk, Razin Syed, and Rizuana Afag—all are parties to the present action.

[6] At no time before the trial court or this court have the defendants offered any explanation as to how they possess standing to compel an arbitration pursuant to a ground lease between the town and the plaintiff's predecessor in interest.

[7] General Statutes § 47-31 (a) provides in relevant part: "An action may be brought by any person claiming title to, or any interest in, real or personal property, or both, against any person who may claim to own the property, or any part of it, or to have any estate in it, either in fee, for years, for life or in reversion or remainder, or to have any interest in the property, or any lien or encumbrance on it, adverse to the plaintiff, or against any person in whom the land records disclose any interest, lien, claim or title conflicting with the plaintiff's claim, title or interest, for the purpose of determining such adverse estate, interest or claim, and to clear up all doubts and disputes and to quiet and settle the title to the property. . . ."

[8] We note that this court, in *Fountain Pointe, LLC* v. *Calpitano*, 144 Conn. App. 624, 651, 76 A.3d 636, cert. denied, 310 Conn. 928, 78 A.3d 147 (2013), held that the failure to join a party with an adverse interest in the property to a quiet title action "does not require reversal," as "[o]nly the parties to an action to quiet title are bound by the judgment." (Internal quotation marks omitted.)

[9] The defendants' claim refers to subsections (a) (3) and (c) of that rule. Rule 3.3 (a) (3) of the Rules of Professional Conduct provides that "[a] lawyer shall not knowingly . . . [o]ffer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal." Rule 3.3 (c) provides: "The duties stated in subsections (a) and (b) continue at least to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6."

[10] The third claim is set forth in the defendants' principal appellate brief as follows: "[Rules of Professional Conduct] Rule 3.3 requires counsel of record, including Pullman & Comley, LLC, attorneys and the undersigned

attorney (as well as the appearing town attorney Robert DeCrescenzo of Updike, Kelly & Spellacy, P.C.) to take 'reasonable remedial measures' per subsections (a) (3) and (c) of . . . rule 3.3, especially after the issue was raised before [the court] on August 29, 2013, and a request for [Practice Book] § 2-32 (a) (2) (F) ruling resulted in both an oral ruling . . . and written ruling . . . by [the court] when the undersigned defendants' attorney 'knew' (had actual knowledge per [Rules of Professional Conduct] Rule 1.0 [g]) that the 'property,' i.e., CHFA Development #91-021P (commonly called 'Eno Farms') is 'probably stolen' within the meaning of subsection (8) of [General Statutes] § 53a-119, since the fifty households (including the five defendant households) comprising the Eno Farms property (CHFA Development #91-021P) have been 'deprived' within the meaning of [General Statutes] § 53a-118 (a) (3) in the said 'property,' i.e., Development #91-021P, was 'withheld' within the meaning of [General Statutes] § 53a-118 (a) (3) (A) over the past fifteen to twenty years due to the failure to establish a properly formed 'limited equity cooperative' per subsection (a) of [General Statutes] § 47-242 effectuating the 'homeownership opportunities' set out in the ground lease and the obligation of good faith set out in [General Statutes] § 47-211 with [General Statutes] § 47-212 'Liberally Administered Remedies' and the 'reasonable remedial measures' provision of [Rules of Professional Conduct] rule 3.3, require Pullman & Comley, LLC, attorneys as well as the town attorney . . . to acknowledge and counsel their respective clients that the property, i.e., CHFA Development #91-021P, 'is received, retained or disposed of with purpose to restore it to the [rightful] owners' per [General Statutes] § 47-53a-119 (8), namely, the fifty households residing within CHFA Project #91-021P, in the form of a new and properly formed 'Limited Equity Cooperative' which fulfill the 'home ownership' promised in the ground lease, especially after they received the undersigned's letter of May 6, 2014."

[11] In its appellate brief, the plaintiff argues that, although the defendants "presented their advice of counsel defense as a special defense, it appears that the trial court elected to consider the defense as probative evidence of the existence or absence of malice rather than as a free standing special defense." On our review of the record, we agree with the plaintiff that the court did not recognize a new special defense to a slander of title action, but instead simply evaluated the evidence submitted therewith in determining whether the defendants possessed the requisite malice.

[12] The plaintiff also argues that "public policy should prevent the defendants from asserting the advice of counsel defense," cautioning that "permitting the defendants to transfer blame for their conduct onto their attorney—who aided and abetted the defendants in their quest to disrupt the sale [of the property to the corporation]—would lead to absurd results if any time that a person wished to disrupt a property transaction it could simply state that it was relying on advice of counsel and therefore . . . is immune from damages." Although we appreciate that concern, we are confident that the trial judges of this state are up to the task of properly assessing and, as appropriate, rejecting self-serving and unfounded claims of reliance on the advice of counsel.

———————————————